[Civ. No. 46079. Second Dist., Div. Three. Nov. 24, 1975.]

RALPH J. GEFFEN, Plaintiff, Cross-defendant and Appellant, v.
RUSSELL J. MOSS, Defendant, Cross-complainant and Respondent.

## COUNSEL

Louis R. Stein, for Plaintiff, Cross-defendant and Appellant.

Russell J. Moss, in pro. per., for Defendant, Cross-complainant and Respondent.

## OPINION

**ALLPORT, Acting P. J.**—Ralph J. Geffen appeals from a judgment entered in favor of Russell J. Moss in an action for damages for breach of contract. It appears without conflict that, because of an appointment as a United States magistrate precluding him from continuing the private practice of law, attorney Geffen entered into a written agreement with attorney Moss whereby Geffen agreed to sell and Moss to buy "the physical assets, files and work in process" of Geffen's law practice. The

total purchase price was $27,500. Fifteen thousand dollars was paid in accordance with the terms of the contract. The action seeks to recover an unpaid balance of $12,500 plus attorney's fees and costs.

*The Contract*

The pertinent provisions of the contract are as follows:

"RALPH J. GEFFEN, hereinafter designated as 'Geffen,' and RUSSELL J. MOSS, hereinafter designated as 'Moss,' agree as follows:

"Geffen hereby sells to Moss the physical assets, files and work in process of the law practice of Geffen located in the City of Norwalk, except as hereinafter specified, on the following terms and conditions:

". . . . . . . . . . . . . . . .

"The purchase shall include:

"A. Entire law library, excepting not to exceed ten (10) books to be agreed upon between the parties, and Martindale-Hubbell (1969);

"B. Any and all furniture, fixtures, furnishings and equipment, excepting not to exceed six (6) items of decor (not major items) selected by Geffen; and

"C. Subject to approval thereof by the respective clients, all cases and legal matters now pending in the above law practice except personal injury or wrongful death cases and the following legal matters:

". . . . . . . . . . . . . . . .

"Geffen will sublet to Moss, at the same rental (Three Hundred Dollars [$300.00] per month) and upon the same terms and conditions as are provided in the Master Lease held by him, Suite 7 (six [6] rooms) now occupied by Geffen at 11850 East Firestone Boulevard, Norwalk, California, for a term of three (3) years. Upon full payment of the purchase price, Geffen will assign to Moss said Master Lease and will assist in procuring a further lease in Moss' name alone as lessee thereafter upon request of Moss.

"·.  ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

"Geffen expresses an intention to exert his influence for the continued welfare of the practice and to encourage present and former clients to utilize the legal services of the office in the future.

### VIII

"Geffen agrees that he will not, so long as Moss is not in default of any obligation to Geffen hereunder, maintain any office for the practice of law within ten (10) miles of the City of Norwalk nor hold himself out as in practice in said area for a period of six (6) years following the execution of this Agreement without the consent of Moss.

"·.  ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

"All fees collected for work done by Moss shall belong to Moss; and all fees collected for work in process, as to which the fee is contingent or agreed to be collected only after the completion of the work, or only in stages (and not collected or due on January 1, 1971), shall belong to Moss.

"·.  ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

"Appropriate and ethical announcements may be sent out by Moss of his succession to the practice, at his expense; and Geffen will cooperate in the wording and mailing list for such announcements.

"·.  ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

" Of the total purchase price, ~~Thirteen~~ *Fifteen* Thousand ~~Dollars~~ *Dollars*  ~~Seven Hundred Fifty Dollars~~ ($~~13,750~~ *15,000*.00) is attributable to the fair value of physical assets sold. "

### Findings of Fact

The pertinent findings of fact are as follows:

"3. That it was the intention of plaintiff, an Attorney at Law, to sell to the defendant, also an Attorney at Law, his, the plaintiff's practice of law, insofar as the same could be accomplished within the limits and

confines of the canons of ethics and it was the intention of the defendant Attorney at Law to purchase the same from plaintiff.

"4. That the agreement between plaintiff and defendant executed December 1, 1970, provided for the sale of all physical assets of the Law Offices of Plaintiff Attorney, which consisted generally of a Library, Index of former and present clients, office equipment, and a three-year lease which was subsequently assigned to defendant and which provided a substantial benefit by way of rental less than prevailing rates in the community, which benefit was $8,500.00. Custody of all files of completed and pending business were transferred to defendant. The Court further finds the value of all of said assets other than the lease to be in the approximate sum of $6,500.00, and the total value of all physical assets, including the lease to be the sum of $15,000.00.

"  .     .    .    .    .    :    .    .    .    .    .    .    .    .    .    .    .    .

"6. That the contract, Exhibit 3 in evidence, omits any reference to good will and precludes any payment to the plaintiff based on pending or future business.

"7. That the plaintiff did not and would not break down the total sales price as to value assigned to any particular item.

"  .     .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"9. That the plaintiff per the terms of the contract expressed his intention to exert his influence for the continued welfare of the practice and to encourage present and former clients to utilize the legal services of the law office in the future; and that pursuant thereto he did thereafter with the aid of the defendant prepare and circulate the letter of announcement, Exhibit 9.

"  .     .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"13. That both plaintiff and defendant considered the expectation of future business from present and former clients as a principal motivating factor in this sale transaction.

"14. That without the expectation and hope of future patronage by existing and former clients of the office, the value of the law office would not exceed $15,000.00.

"15. That the plaintiff advised the defendant that he could make no promise or guarantee of continued patronage by existing and former clients.

"16. That the attempted sale of future patronage by existing and former clients of the office constituted a sale of the good will of the law practice.

"17. That the expected business from former and current clients of the plaintiff did not materialize and the defendant has utilized that opportunity; and the plaintiff has received the fair value for the physical assets transferred pursuant to the agreement."

## Conclusions of Law

The pertinent conclusions of law are as follows:

"1. That the plaintiff's attempt to sell the expectation of future patronage of his former and current clients and to encourage them to patronize the defendant, and the defendant's attempt to purchase the future patronage of the plaintiff's former and current clients and the recommendation of himself by the plaintiff to those former and current clients constitutes an attempt to buy and sell the good will of a law practice.

"2. That the sale or attempted sale of the good will of the law practice is contrary to public policy and against the spirit and intent of Rules 2 and 3 of Section 6076 of the Business and Professions Code, 'The State Bar Act' and of the ABA Canons of Ethics No. 4, EC 4-6, prohibiting the sale of a law practice as a going business.

"3. That both plaintiff and defendant are in pari delicto and the Court will leave the parties where it has found them as to the attempted sale of good will of the law practice.

"4. That neither plaintiff nor defendant has been unjustly enriched at the expense of the other.

"5. That judgment should be for the defendant on the complaint together with defendant's costs and attorney's fees in the sum of $500.00."

## Contentions

It is contended on appeal that the trial court erred in utilizing extrinsic parol and other evidence to alter the express terms of the written contract and in then construing the contract, as altered, to be contrary to public policy and unenforceable.

The argument advanced is that the agreement, in clear, plain and unambiguous language, provided for the purchase and sale of the physical assets, assignment of the leasehold and for retention by the buyer of any legal fees generated from the work in process and did not purport to dispose of good will of a law practice. It is urged that the language employed by the contracting parties in drafting the agreement did not warrant the resort to extrinsic evidence nor require the result reached by the trial court.

## Discussion

At the outset we note that illegality of the agreement was raised by way of an affirmative defense in the answer. The sufficiency of the allegation of illegality was not challenged in the lower court. ▮▮▮ The threshold question presented for consideration by this court is whether the resort to extrinsic evidence as to the intention of the parties on the issue of illegality was proper. The record clearly indicates that the trial court did admit and utilize such evidence in resolving this issue against Geffen. In the memorandum of intended decision we find the following: "Although the contract, Exhibit 3 in evidence, is so drawn as to omit any reference to 'good will', precludes any payment to the plaintiff based on pending or future business, and although the evidence establishes that the plaintiff at no time did or would break down the total sales price as to the value assigned to any particular item, and although the contract provision, Section 18, providing $15,000.00 instead of $13,750.00 as attributable to the fair value of physical assets was prompted by way of modification at defendant's request, it is clearly apparent to this court, based on the total evidence presented, that each party considered the expectation of future business from present clients and former clients as a principal motivating factor in this transaction. This concern is evidenced to some extent by paragraph 7 of the contract referring to plaintiff's intention to exert his influence for the continued welfare of the practice and to encourage present and former clients to utilize the legal services of the office in the future. This factor of the sale is further evidenced and supplemented by the letter of announcement, Exhibit 9."[1]

---

[1] After advising the clients of his leaving the practice Geffen's letter stated: "All of my files and records remain intact at the above Norwalk address. In order to

■ While it is true that a written instrument may not be changed, altered, modified, detracted from or added to in any particular whatsoever except by another instrument in writing, where parol or other extrinsic evidence is consistent with, explains and does not vary the written contract, it may be admitted. (*Shimmon* v. *Moore,* 104 Cal.App.2d 554, 559 [232 P.2d 22].) ■ *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373], disposes of the argument advanced in the instant case that the intent of the parties must be determined "from the four corners of the agreement." In that case it was said at page 37:

"The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 520-521 [67 Cal.Rptr. 761, 439 P.2d 889]; *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]; *Hulse* v. *Juillard Fancy Foods Co.* (1964) 61 Cal.2d 571, 573 [39 Cal.Rptr. 529, 394 P.2d 65]; *Nofziger* v. *Holman* (1964) 61 Cal.2d 526, 528 [39 Cal.Rptr. 384, 393 P.2d 696]; *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311, 315 [38 Cal.Rptr. 505, 392 P.2d 265]; *Imbach* v. *Schultz* (1962) 58 Cal.2d 858, 860 [27 Cal.Rptr. 160, 377 P.2d 272]; *Reid* v. *Overland Machined Products* (1961) 55 Cal.2d 203, 210 [10 Cal.Rptr. 819, 359 P.2d 251].)

"A rule that would limit the determination of the meaning of a written instrument to its four-corners merely because it seems to the court to be clear and unambiguous, would either deny the relevance of the intention of the parties or presuppose a degree of verbal precision and stability our language has not attained."

We agree, however, that this court is not bound by the trial court's interpretation of the contract. (*Estate of Dodge,* 6 Cal.3d 311, 318 [98

provide continuity in the handling of the legal affairs of the clients of my office, I was fortunate in being able to arrange for an experienced and competent attorney, Russell J. Moss, to take over at my location.

Mr. Moss, who practiced in the Inglewood-Hawthorne area for the past sixteen years, has agreed to complete all legal matters in the office, subject to the approval of the clients involved. He has custody of all files and records of the office, including original wills which may have been drawn for you by this office.

If you have any questions or problems regarding your legal affairs, Mr. Moss will be pleased to assist you just as I would if I were available."

Cal.Rptr. 801, 491 P.2d 385]; *Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].) ▇▇ We now proceed to make an independent examination of the agreement as to its meaning to determine whether the trial court's interpretation is so erroneous that it must be reversed.

The preamble states that the subject matter of the sale is the physical assets, files and work in process "of the law practice." In paragraph III the subject matter is more specifically defined as consisting of a law library, furniture, fixtures, furnishings and "all cases and legal matters now pending in the above law practice [with certain exceptions]. . . ." Geffen then agrees to sublet the premises and upon payment of the purchase price to assign the lease. Geffen expresses an intention to exert his influence for the "continued" welfare of the practice and to encourage present and former clients to "utilize the legal services of the office in the future." He agrees not to compete with Moss in the practice. Noting that the fair value of the physical assets, defined as library, furniture, fixtures, furnishings and equipment is established in the contract to be $15,000 and that all fees earned for work done by Moss or collected for work in progress belong to Moss, we immediately wonder what the additional consideration, payable in monthly installments totaling $12,500 covers. It does not appear to be for assignment of the lease since that act is contingent upon and to be made after full payment of the total purchase price of $27,500.

In light of the applicable law we conclude that these provisions of the agreement, in view of the transaction contemplated thereby, clearly support the trial court's action in utilizing parol and extrinsic evidence to determine the intent of the parties, although we are of the opinion it would not have been unreasonable for that court to conclude from the terms of the contract itself that a sale of future patronage of existing and former clients was contemplated without resort to extrinsic evidence. What else was being sold for the $12,500 now being sought by Geffen in this action?

No attack is made upon the sufficiency of the evidence to support the finding that the parties "considered the expectation of future business from present and former clients as a principal motivating factor in this sale transaction" and that without that expectation the value of the law office would not exceed $15,000. Under the circumstances we must presume there was evidentiary support for these and the other findings. (*Brown* v. *World Church,* 272 Cal.App.2d 684, 690 [77 Cal.Rptr. 669, 45 A.L.R.3d 622].)

We turn now to the validity of the trial court's conclusion that the attempt to sell the expectation of future patronage of former and current clients was an attempt to buy and sell the good will of a law practice as a going business. In this respect we have read and considered the rationale of that court as expressed in its memorandum of intended decision on the issue and, while not binding on this court (*Dairyman's Cooperative Creamery Assn.* v. *Leipold,* 34 Cal.App.3d 184, 188 [109 Cal.Rptr. 753]), we adopt such as a part of this opinion by reference.[2]

Plaintiff argues that the conclusion of illegality is neither sanctioned by law nor compelled by the facts of this case. True, we have been referred to no specific statute nor any California case law compelling us to hold that a purported sale of good will of a law practice is contrary to public policy and therefore illegal. We are, however, by this argument, expected to overlook the policy expressed in rules 2 and 3 of the Rules of Professional Conduct of the State Bar of California and approved by the Supreme Court pursuant to Business and Professions Code section 6076 prohibiting solicitation or obtaining of professional employment by any means of communication. Noting, as found by the trial court, that two able experienced attorneys drew the agreement to sell only insofar as this could be accomplished "within the limits and confines of the canons of ethics," they themselves acknowledge some applicable limitation on the scope of the sale. We agree that, insofar as the parties purport to sell the physical assets and to assign the leasehold and dispose of pending office

[2]We refer specifically to the following portion of the memorandum: " 'Good will' as defined by the Business & Profession Code 14100 as being the expectation of future public patronage is a valid definition applicable to this case. Each party entered into this sale contract with the expectation and hope of future patronage by existing and former clients of the office. It is true that the plaintiff advised the defendant that no promise or guarantee could be made as to continued patronage, but nevertheless, each party considered that expectation as a principal element or factor of the sale. Without such a principal factor the reasonable value of the law office would not exceed $15,000.00. To the extent that the plaintiff indirectly attempted to sell that expectation of future patronage and to encourage his former and current clients to patronize the defendant, and to the extent that the defendant sought to purchase that expectation of future patronage and the recommendation of himself by the plaintiff to the plaintiff's former and current clients, each party participated in an attempt to buy and sell good will of a law practice, which in this court's opinion is contrary to the spirit and intent of Rule 2 and 3 of the State Bar Act, and therefore is contrary to public policy. There is no question but that an existing law practice may have 'good will' as an asset which under certain circumstances must be evaluated for a particular reason, as in a dissolution action between husband and wife, but the attempted sale of 'good will' of a practice by one lawyer to another involves an altogether different concept with altogether different implications and consequences. Those implications and consequences are well stated in the defendant's citation of the May 1973 issue of the Practical Lawyer, Vol. 19, Number 5, Page 63, in the article entitled 'The Sale of a Law Practice.' "

matters, the agreement does not violate public policy as expressed in the canons of legal ethics. However, it appears obvious to us that both parties, recognizing a limitation against the sale of good will, nevertheless attempted to avoid a proscription against such by deliberately failing to mention good will as such in the agreement. We cannot say that the trial court's resolution of the matter was unreasonable. The attempted sale of the expectation of future patronage by former and current clients of a law office coupled with an agreement to encourage said clients to continue to patronize the purchaser of the physical assets of the office, under the facts of this case, may well be said to constitute an attempt to buy and sell the good will of a law practice as a going business, contrary to public policy, and that the portion of the agreement purporting to so do is invalid and unenforceable. The following language found in *Linnick* v. *State Bar,* 62 Cal.2d 17, 21 [41 Cal.Rptr. 1, 396 P.2d 33], although involving the activities of a lay person and an attorney, indicates the existence of applicable ethical considerations: "Rule 3 of the Rules of Professional Conduct, however, prohibits an attorney from remunerating another for either 'soliciting' or 'obtaining' employment for him. Whether or not a lay intermediary solicits the business referred, he may not keep the best interests of the clients paramount when he profits from his referrals. He is likely to refer claimants, not to the most competent attorney, but to the one who is compensating him. (See *Hildebrand* v. *State Bar,* 36 Cal.2d 504, 521, 523 [225 P.2d 508] [concurring opinion by Traynor, J.]; *Guides to Professional Conduct for the New California Practitioner,* 36 State Bar J. 1013, 1020-1021; *Ambulance Chasing and Related Evils,* 7 State Bar J. 22, 23.) Hence, although there is no evidence that Williams solicited strangers, or that he was paid for specific referrals, the relationship between Williams and petitioner created the risk that rule 3 is designed to prevent."

Even though such is not deemed contrary to public policy, the following language in *Lyon* v. *Lyon,* 246 Cal.App.2d 519, 524, 526 [54 Cal.Rptr. 829], renders an attempted sale of good will of a law practice suspect: "The nature of a professional partnership for the practice of law, the reputation of which depends on the skill, training and experience of each individual member, and the personal and confidential relationship existing between each such member and the client, places such a partnership in a class apart from other business and professional partnerships. The legal profession stands in a peculiar relation to the public and the relationship existing between the members of the profession and those who seek its services cannot be likened to the relationship of a merchant to his customer. (*Barton* v. *State Bar,* 209 Cal.

677, 682 [289 P. 818].) Thus, our research has brought to light no case in this jurisdiction in which an allowance was made to a partner for goodwill upon the dissolution of a partnership created for the practice of law."

Geffen argues that, if the contract is held to be illegal, the award of attorney's fees in favor of Moss as the prevailing party would be improper. We must agree. In paragraph IB the agreement provides for the payment of the $12,500 in installments and, in the event of default and the filing of suit to enforce payment, for attorney's fees to Geffen. Civil Code section 1717 renders the obligation to pay attorney's fees mutual. However, since we have decided that the obligation to pay the $12,500 is contrary to public policy and unenforceable the right to attorney's fees created by this provision never matured.

The judgment is modified by striking therefrom that portion awarding defendant attorney's fees. In all other respects the judgment is affirmed.

Cobey, J., and Potter, J., concurred.

A petition for a rehearing was denied December 16, 1975, and appellant's petition for a hearing by the Supreme Court was denied February 11, 1976.