Filed 12/30/14  Palmer v. Patel CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WILLIAM W. PALMER et al., | H039336 |
| Plaintiffs and Appellants, | (Santa Cruz County Super. Ct. No. CV168214) |
| v. | |
| CHANDRAVALLI PATEL et al., | |
| Defendants and Respondents. | |

William W. Palmer and Joanne L. Palmer (Palmers) appeal from the postjudgment order granting a motion for attorney fees and costs against them.  They challenge the award of attorney fees under Civil Code section 1717[1] on multiple grounds.  We find no abuse of discretion and affirm.

I

*Procedural History*

The Palmers' first amended complaint (hereinafter "the complaint") alleged seven causes of action:  (1) declaratory relief, (2) breach of contract, (3) breach of implied covenant of good faith and fair dealing, (4) fraud, (5) negligent misrepresentation, (6) negligence, and (7) rescission.  The named defendants were The Hash Patel Family Trust, "Chandravali [*sic*] Patel," Raj H. Patel, Jason H. Patel, Diane Patel, The Hasmukh M. Patel and Chandravalli H. Patel 2005 Revocable Living Trust, The Hasmukh M. Patel 2005 Revocable Trust for Raj H. Patel, The Hasmukh M. Patel 2005 Revocable Trust for

---

[1]     All further statutory references are to the Civil Code unless otherwise stated.

Jason H. Patel, Paul Hancock individually and as the successor trustee of The Hasmukh M. Patel 2005 Revocable Trust for Dianne Patel, The Hasmukh M. Patel 2005 Revocable Trust for Diane Patel, and The Foreclosure Company.[2]

The complaint contains the following allegations, among others. The Palmers purchased a vacation home located at 453 Seaview Drive, Aptos, California from defendants for $2,154,892.40. Defendants agreed to carry back a note. Before the purchase contract was executed, Chandravalli Patel (aka Bena Patel) conveyed her community property interest in the property to Hasmukh Patel (aka Hash Patel).[3] Hasmukh executed the documents as a married man.

It further states the following. Prior to his death, Hasmukh established four new trusts. Hasmukh did not actually own or hold title to the Seaview property at the time of the sale and neither did Chandravalli. In addition, Hasmukh failed to disclose certain information regarding a lot line dispute and problems with a neighbor, the soil and termites to the Palmers.

The complaint further avers the following facts. After the sale of the property to the Palmers, Chandravalli claimed to be the successor in interest to the contract and note and the trustee for the Hash Patel Family Trust. For about three years after the sale, the Palmers were advised to make their checks personally payable to "Bena Patel" and to deposit their payments, totaling about $610,359.28, into her personal bank account.

In the complaint, the Palmers sought general and special damages, rescission and disgorgement of payments made by them, and the imposition of a constructive trust. They also sought to recover attorney fees.

---

[2] "[A] trust itself can neither sue nor be sued in its own name. Instead, the real party in interest in litigation involving a trust is always the trustee. (*Powers v. Ashton* [(1975)] 45 Cal.App.3d 783, 787; Code Civ. Proc., § 369.)" (*Presta v. Tepper* (2009) 179 Cal.App.4th 909, 914.)

[3] For the ease of reference and not out of disrespect, we will refer to Chandravalli Patel and Hasmukh Patel by their first names.

Chandravalli, individually and as the "erroneously sued" trustee of the Hash Patel Family Trust, brought a motion for summary judgment and, alternatively, for summary adjudication of 22 issues.[4] She asserted, among other things, that all causes of action were barred as a matter of law under the one-year statute of limitation established in Code of Civil Procedure section 366.2, subdivision (a).[5]

The Palmers brought a motion for summary judgment against defendants Hash Patel Family Trust and Chandravalli as to the second cause of action (breach of contract), the fourth cause of action (fraud), and seventh cause of action (rescission). They asserted that the following facts were undisputed. "Hash Patel did not hold title to the 453 Seaview Property when he sold it to Plaintiffs in his capacity as 'the separate property of a married man.' " At the time of the conveyance to Plaintiffs, the 453 Seaview Property was held in trust.

The trial court granted defendant Chandravalli's summary judgment motion based on the statute of limitations defense since the evidence showed that Hasmukh died on October 20, 2006 and the Palmers' original complaint was filed on December 1, 2008. It denied the Palmers' motion for summary judgment or summary adjudication as moot. The court ordered judgment to be entered on each of the seven causes of action against the Palmers and in favor of "Chandravalli H. Patel, individually, and Chandravalli H.

---

[4]     The complaint does not reflect that Chandravalli was sued in a representative capacity. The limited record on appeal does not disclose that the complaint was amended to additionally sue Chandravalli as trustee of the Hash Patel Family Trust.

[5]     Code of Civil Procedure section 366.2, subdivision (a), provides: "If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply." "Except as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death, but survives subject to the applicable limitations period." (Code Civ. Proc., § 377.20, subd. (a).)

Patel, sued erroneously as Trustee of the Hash Patel Family Trust." Judgment was entered in favor of "[d]efendants Chandravalli H. Patel, individually, and Chandravalli H. Patel, sued erroneously as the Trustee of the Hash Patel Family Trust."

In a written motion, defendants Chandravalli H. Patel, individually, and Chandravalli H. Patel, sued erroneously as trustee of the Hash Patel Family Trust (referred to collectively as the "Patel Defendants") sought an award of attorneys fees and costs pursuant to section 1717, subdivision (a), and Code of Civil Procedure section 1033.5, subdivision (a)(10)(A). The motion was predicated on the attorney fees clause in the Residential Purchase Agreement between the Palmers, the buyers, and Hasmukh, the seller, which was attached to the supporting declaration of counsel. That purchase agreement's attorney fees clause reads: "ATTORNEY FEES: In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A [Mediation]."

The Deed of Trust and Assignment of Rents (Deed of Trust) executed by the Palmers, the trustors, in favor of Hasmukh, the beneficiary, was attached to a further declaration of counsel. In provision (3) of the Deed of Trust, the trustors (the Palmers) agreed to "appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed." In provision (13) of the Deed of Trust, the trustors agreed: "[T]his Deed of Trust applies to, insures to the benefit of, and binds all parties hereto, their heir, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the Note secured hereby, whether or not named as Beneficiary herein. . . ."

4

The trial court granted the motion for attorney fees brought by the "Patel Defendants," identified as "[d]efendants Chandravalli H. Patel, individually, and Chandravalli H. Patel, sued erroneously as Trustee of the Hash Patel Family Trust." In its order, filed December 18, 2012, the court found that the attorney fee clause in the purchase agreement was "broad enough to encompass all the causes of action brought by the Plaintiffs in this litigation." It additionally determined that provision (3) of the Deed of Trust, especially when read with its provision (13), was "also broad enough to encompass all of the causes of action . . . ." The trial court further determined that both attorney fee clauses extended to the "Patel Defendants," although not signatories to that agreement, under section 1717.

The court subtracted 55.8 hours at $400 per hour, a total of $22,320, from the request for an award of $355,080 in attorney fees. It awarded attorney's fees in the amount of $332,760 and costs of suit in the amount of $7,807.55, a total award of 340,567.55, in favor of defendant Chandravalli and against the Palmers.

An amended judgment, which included that attorney's fees and costs award, was filed on December 19, 2012.

On February 15, 2013, the Palmers filed a notice of appeal from the order awarding attorney fees and costs and from the amended judgment. This appeal does not challenge the trial court's rulings on summary judgment that led to the judgment in favor of Chandravalli.

II

*Discussion*

A. *Section 1717*

"California follows the 'American rule,' under which each party to a lawsuit ordinarily must pay his or her own attorney fees. [Citations.] Code of Civil Procedure section 1021 codifies the rule, providing that the measure and mode of attorney

5

compensation are left to the agreement of the parties '[e]xcept as attorney's fees are specifically provided for by statute.' " (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 516.)

Section 1717, subdivision (a), provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. . . . " It further states: "Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract. . . . [¶] Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit. [¶] Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void." (§ 1717, subd. (a).)

"The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions. [Citation.] Courts have recognized that section 1717 has this effect in at least two distinct situations." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610 (*Santisas*).)

"The first situation in which section 1717 makes an otherwise unilateral right reciprocal, thereby ensuring mutuality of remedy, is 'when the contract provides the right to one party but not to the other.' [Citation.] In this situation, the effect of section 1717 is to allow recovery of attorney fees by whichever contracting party prevails, 'whether he or she is the party specified in the contract or not' (§ 1717, subd. (a))." (*Santisas*, *supra*, 17 Cal.4th at pp. 610-611.)

6

"The second situation in which section 1717 makes an otherwise unilateral right reciprocal, thereby ensuring mutuality of remedy, is when a person sued on a contract containing a provision for attorney fees to the prevailing party defends the litigation 'by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract.' [Citations.] Because these arguments are inconsistent with a contractual claim for attorney fees under the same agreement, a party prevailing on any of these bases usually cannot claim attorney fees as a contractual right. If section 1717 did not apply in this situation, the right to attorney fees would be effectively unilateral— regardless of the reciprocal wording of the attorney fee provision allowing attorney fees to the prevailing attorney—because only the party seeking to affirm and enforce the agreement could invoke its attorney fee provision. To ensure mutuality of remedy in this situation, it has been consistently held that when a party litigant prevails in an action on a contract by establishing that the contract is invalid, inapplicable, unenforceable, or nonexistent, section 1717 permits that party's recovery of attorney fees whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed. [Citations.]" (*Santisas*, *supra*, 17 Cal.4th at p. 611.) "The statute would fall short of [its] goal of full mutuality of remedy if its benefits were denied to parties who defeat contract claims by proving that they were not parties to the alleged contract or that it was never formed." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 870.)

B. *Entitlement to Attorney Fees Award Pursuant to Section 1717*

1. *"Action on a Contract"*

One of the Palmers' arguments appears to be that the lawsuit was primarily a fraud action and, therefore, this lawsuit was not an action on a contract. They maintain that their claims were "based on the fraud and deceit relating to the purchase of the subject property" even though they arose from a void contract.

"The operative language of section 1717 states that it applies '[i]n *any action on a contract*, where the contract specifically provides that attorney's fees and costs, which are

7

incurred *to enforce that contract,* shall be awarded either to one of the parties or to the prevailing party . . . .' (§ 1717, subd. (a), italics added.) Consistent with this language, this court has held that section 1717 applies only to actions that contain at least one contract claim. (*Stout v. Turney* (1978) 22 Cal.3d 718, 730 . . . ; see also *Moallem v. Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1832-1833 . . . .) If an action asserts both contract and tort or other noncontract claims, section 1717 applies only to attorney fees incurred to litigate the contract claims. (*Reynolds Metals Co. v. Alperson*, [(1979)] 25 Cal.3d 124, 129-130.)"[6] (*Santisas*, *supra*, 17 Cal.4th at p. 615.) The Palmer's complaint includes multiple causes of action on the contract.

We recognize that "an action for fraud seeking damages sounds in tort, and is not 'on a contract' for purposes of an attorney fee award, even though the underlying transaction in which the fraud occurred involved a contract containing an attorney fee clause. (*Stout v. Turney* (1978) 22 Cal.3d 718, 730 . . . .)" (*Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 549.) Where a plaintiff seeks rescission of a contract based on fraud, however, "courts have concluded such claim does sound in contract and permits the award of fees. (*Hastings v. Matlock* (1985) 171 Cal.App.3d 826, 841 . . . [action to rescind purchase agreement is an action to enforce the agreement].)" (*Ibid.*; see *Star Pacific Investments, Inc. v. Oro Hills Ranch, Inc.* (1981) 121 Cal.App.3d 447, 461.)

Further, "[a]ctions for a declaration of rights based upon an agreement are 'on the contract' within the meaning of Civil Code section 1717. (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1259 . . . , review den.)" (*Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234, 1246.) An action to avoid enforcement of a contract through declaratory relief is an action "on a contract" within

---

[6] Nevertheless, a contract's "attorney fee provision, depending upon its wording, may afford the defendant a contractual right, not affected by section 1717, to recover attorney fees incurred in litigating [non-contract] causes of action." (*Santisas*, *supra*, 17 Cal.4th at p. 617.)

the meaning of section 1717.  (*Eden Township Healthcare District v. Eden Medical Center* (2013) 220 Cal.App.4th 418, 426-427.)

"The determination of the party prevailing *on the contract* for purposes of awarding attorney fees under section 1717 must be made independently of the determination of the party prevailing *in the overall action* for purposes of awarding costs under Code of Civil Procedure section 1032.  (*Zintel Holdings*, *LLC v. McLean* (2012) 209 Cal.App.4th 431, 438-439 & fn. 1 . . . ; *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 491 . . . .)  The prevailing party determination under section 1717 must be based on the results of the litigated contract claims, 'without reference to the success or failure of noncontract claims.'  ([*Hsu v. Abbara*, *supra*, 9 Cal.4th at pp. 873-874]; accord *Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 358.)"  (*Douglas E. Barnhart*, *Inc. v. CMC Fabricators*, *Inc.* (2012) 211 Cal.App.4th 230, 239-240.)

As stated, "[i]f an action asserts both contract and tort or other noncontract claims, section 1717 applies only to attorney fees incurred to litigate the contract claims. ([*Reynolds*], *supra*, 25 Cal.3d 129-130.)"  (*Santisas*, *supra*, 17 Cal.4th at p. 615.)  It is unnecessary to apportion attorney fees, however, when they are "incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed."  (*Reynolds Metals Co. v. Alperson*, (1979) 25 Cal.3d 124, 129-130. (Reynolds).)

The trial court in this case did not err in concluding this lawsuit involved an action "on a contract," upon which defendant Chandravalli prevailed.

2. *Void Contracts*

The Palmers assert that, since the residential purchase agreement is void as a matter of law, Chandravalli may not recover attorney fees pursuant to section 1717.  They contend that Hasmukh "had no capacity to enter into the contract because the rightful owner was the Hasmukh M. Patel Living Trust (and its trustees and beneficiaries)."  They

fail to distinguish between an invalid contract and an illegal contract that is unenforceable as against public policy.

"Ordinarily, in an action on a contract providing for an award of attorney fees, Civil Code section 1717 entitles the prevailing party to attorney fees, even when the party prevails on the ground that the contract is inapplicable, invalid, unenforceable, or nonexistent, if the other party would have been entitled to attorney fees had it prevailed. (*Hsu v. Abbara*[,*supra*,] 9 Cal.4th 863, 870 . . . .)  This general rule 'serves to effectuate the purpose underlying section 1717,' which was enacted to establish mutuality of remedy where a contractual attorney fee clause makes recovery of fees available for only one party.  (*Ibid.*)"  (*Yuba Cypress Housing Partners*, *Ltd. v. Area Developers* (2002) 98 Cal.App.4th 1077, 1081 (*Yuba Cypress*).)

" '[A] different rule applies where a contract is held unenforceable because of illegality.'  (*Bovard* [*v. American Horse Enterprises*, *Inc.*, (1988)] 201 Cal.App.3d 832, 843; *Geffen* [*v. Moss* (1975)] 53 Cal.App.3d 215, 227.)  'A party to a contract who successfully argues its illegality stands on different ground than a party who prevails in an action on a contract by convincing the court the contract is inapplicable, invalid, nonexistent or unenforceable for reasons other than illegality.'  (*Bovard*, *supra*, at p. 843.)"  (*Yuba Cypress*, *supra*, 98 Cal.App.4th at pp. 1081-1082.)

As a general rule, courts will "withhold relief under the terms of an illegal contract or agreement which is violative of public policy.  [Citations.]"  (*Tri-Q*, *Inc. v. Sta-Hi Corp.* (1965) 63 Cal.2d 199, 218.)  This rule is "intended to prevent the guilty party from reaping the benefit of his wrongful conduct, or to protect the public from the future consequences of an illegal contract" but it does not "necessarily apply to both parties to the agreement unless both are truly in *pari delicto*."  (*Ibid*.)

Deterrence is the reason that courts will refuse to give aid to parties to an illegal bargain.  (*Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 150.)  "Knowing that they will receive no help from the courts and must trust completely to each other's good

10

faith, the parties are less likely to enter an illegal arrangement in the first place. [Citations.]" (*Id*. at pp. 150-151.) " 'No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out . . . .' [Citation.]" (*Lee On v. Long* (1951) 37 Cal.2d 499, 502.) Where parties to a contract against public policy are in pari delicto, "[i]t is the policy of the law to leave the parties precisely where it finds them." (*Bank of Orland v. Harlan* (1922) 188 Cal. 413, 421.)

In *Yoo v. Jho* (2007) 147 Cal.App.4th 1249, the buyer of a business substantially involved in the sale of counterfeit merchandise sued the seller for breach of contract and fraud. (*Id*. at pp. 1251-1252, 1256.) The buyer sought rescission. (*Id*. at p. 1252.) The appellate court determined that the object of the business purchase agreement was illegal and the trial court erred by awarding any relief because "the parties were precluded from utilizing the court to enforce their illegal bargain." (*Id*. at pp. 1255-1256.) Since the purchase agreement was "not legally enforceable due to its illegal object," the seller was not entitled to recover attorney fees under the purchase agreement's attorney fee provision. (*Id*. at p. 1256.)

In support of their argument that neither party can enforce the purchase agreement, the Palmers cite *Bovard v. American Horse Enterprises, Inc.* (1988*)* 201 Cal.App.3d 832 (*Bovard*) and *Geffen v. Moss* (1975) 53 Cal.App.3d 215 (*Geffen*). "*Bovard* and *Geffen* are distinguishable from this case because they involved contracts that were entirely unenforceable by either party due to their illegal objects. (*Bovard*, *supra*, at pp. 837, 839-841 [contract to manufacture paraphernalia for use in facilitating the consumption of marijuana]; *Geffen*, *supra*, at pp. 225-227 [contract to purchase the 'good will' of a law practice].)" (*Yuba Cypress*, *supra*, 98 Cal.App.4th at p. 1082.)

The provisions of the Civil Code cited by the Palmers do not establish that the purchase agreement involved an illegality that rendered the residential purchase agreement unenforceable as against public policy. Section 1113 states the two covenants

11

implied in a conveyance of real property by grant deed: "From the use of the word 'grant' in any conveyance by which an estate of . . . fee simple is to be passed, the following covenants, and none other, on the part of the grantor for himself and his heirs to the grantee, his heirs, and assigns, are implied, unless restrained by express terms contained in such conveyance: [¶] 1. That previous to the time of the execution of such conveyance, the grantor has not conveyed the same estate, or any right, title, or interest therein, to any person other than the grantee; [¶] 2. That such estate is at the time of the execution of such conveyance free from incumbrances done, made, or suffered by the grantor, or any person claiming under him." "Such covenants may be sued upon in the same manner as if they had been expressly inserted in the conveyance." (§ 1113.)

Section 1096 provides: "Any person in whom the title of real estate is vested, who shall afterwards, from any cause, have his or her name changed, must, in any conveyance of said real estate so held, set forth the name in which he or she derived title to said real estate. Any conveyance, though recorded as provided by law, which does not comply with the foregoing provision shall not impart constructive notice of the contents thereof to subsequent purchasers and encumbrancers, but *such conveyance is valid as between the parties thereto and those who have notice thereof*." (Italics added.)

It is the seller's duty "to furnish a good and marketable title [citations] and the right of the [buyer] to receive such marketable title is not dependent upon the terms of the contract but is given by the law itself. [Citations.]" (*King v. Stanley* (1948) 32 Cal.2d 584, 589-590, disapproved on another ground in *Patel v. Liebermensch* (2008) 45 Cal.4th 344, 351, fn. 4.) Section 3394 provides: "An agreement for the sale of property cannot be specifically enforced *in favor of a seller* who cannot give to the buyer a title free from reasonable doubt." (Italics added.) But that section does not entitle a seller of real property to defend an action for specific performance on the ground that his title is not as complete as the title he agreed to convey. (*Groobman v. Kirk* (1958) 159 Cal.App.2d 117, 126.)

12

Section 3304 states the buyer's measure of damages where a property seller conveys a defective title: "The detriment caused by the breach of a covenant of 'seizin,' [or] of 'right to convey,' . . . in a grant of an estate in real property, is deemed to be: [¶] 1. The price paid to the grantor; or, if the breach is partial only, such proportion of the price as the value of the property affected by the breach bore at the time of the grant to the value of the whole property; [¶] 2. Interest thereon for the time during which the grantee derived no benefit from the property, not exceeding five years; [¶] 3. Any expenses properly incurred by the covenantee in defending his possession."

Although the Palmers insist the contract was void, the object of the residential purchase agreement, the sale of residential property, was entirely lawful. The operative pleading discloses no illegal consideration. The Palmers' claim that the seller did not actually hold title to the property at the time the purchase agreement was executed does not amount an illegality against public policy. If the Palmers had succeeded in obtaining rescission of the purchase agreement, a declaration that it was invalid, or damages for breach of contract, they would be claiming attorney fees. "To achieve its goal, the statute generally must apply in favor of the party prevailing on a contract claim whenever that party would have been liable under the contract for attorney fees had the other party prevailed." (*Hsu v. Abbara*, *supra*, 9 Cal.4th at pp. 870-871.)

3. *Chandravalli Patel's Non-signatory Status*

The Palmers now argue that, because defendant Chandravalli was a not a signatory to the purchase agreement and there was no privity of contract between them, the trial court lacked authority to award attorney fees.

"As a general rule, attorney fees are awarded only when the action involves a claim covered by a contractual attorney fee provision and the lawsuit is between signatories to the contract. (*Super 7 Motel Associates v. Wang*, [*supra*,] 16 Cal.App.4th at p. 544-545 . . . .)" (*Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 380.) Section 1717's purposes nevertheless require that it "be

13

interpreted to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract *as if he were a party to it*, when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." (*Reynolds*, *supra*, 25 Cal.3d at p. 128, italics added.)

In *Reynolds*, the Reynolds Metals Company sued to hold individuals "personally liable for the debts owed" to it under unpaid promissory notes executed by two bankrupt companies on the theory that the individuals were the alter egos of the corporate signatories. (*Reynolds*, *supra*, 25 Cal.3d at p. 127.) The court explained: "Had plaintiff prevailed on its cause of action claiming defendants were in fact the alter egos of the corporation [citation], defendants would have been liable on the notes." (*Id*. at p. 129.) Since Reynolds Metals would have been entitled to attorney fees under the fee provisions of the two promissory notes if it had prevailed, the defendants were entitled to recover attorney fees pursuant to section 1717 when they prevailed. (*Reynolds*, *supra*, at p. 129, see *id*. at p. 127.)

The Palmers argue that *Reynolds'* extension of section 1717 to allow a non-signatory party to recover attorney fees does not apply. They rely upon *Leach v. Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295 (*Leach*).

In *Leach*, plaintiff Leach was a secondary beneficiary under a testamentary trust created for her mother, who had a life estate in a Salinas residence, a trust property. (*Leach*, *supra*, 185 Cal.App.3d at pp. 1298, 1305.) The mother's son, who had been appointed as a successor trustee, repeatedly mortgaged the residence. (*Id*. at pp. 1298-1300.) Plaintiff Leach brought an action to clear the title to the residence. (*Id*. at pp. 1298, 1300.) After the trial court granted summary judgment in favor of defendants, signatory defendants sought to recover attorney fees from plaintiff Leach. (*Id*. at p. 1301.) The trial court denied the attorney fees motions because plaintiff "Leach was not a signatory to the deeds of trust and notes that included attorneys' fees clauses." (*Ibid*.)

14

As the appellate court determined in *Leach*, plaintiff Leach was neither a signatory to the deeds of trust and promissory notes nor "a signatory's successor in interest." (*Leach*, *supra*, 185 Cal.App.3d at p. 1306.) Rather, the plaintiff Leach was "a beneficiary of a trust, the assets of which the signatory, acting as trustee, ha[d] encumbered." (*Ibid.*) Leach failed to establish the attorney fee "clauses in the promissory note and the deed of trust *actually* entitled her to recover fees." (*Id*. at p. 1307.) The appellate court concluded that "the mutuality of remedy theory of section 1717" precluded recovery of attorney fees from plaintiff Leach. (*Ibid*.)

The Palmers contend the reasoning of *Leach* precludes an award of attorney fees in this case because Chandravalli failed to show they could have recovered fees against her if they had prevailed. They maintain that they could not have recovered attorney fees because "the contract is void as a matter of law."

Chandravalli argues that the Palmers are applying *Reynold*'s "reciprocity test backwards, ignoring that the test requires focus on the plaintiff's status, not on the non-signatory defendant's status." Without any citation to authority, she asserts that "[p]laintiffs were signatories and could have recovered fees had they prevailed."

As we have already indicated, the asserted invalidity of the purchase agreement did not bar recovery of attorney fees under section 1717. Also, the mere fact that the Palmers, unlike plaintiff Leach, were signatories to a contract or instrument containing an attorney fees clause is not determinative because it ignores the pivotal issue of mutuality. Lastly, we agree that it is not enough to show that the signatory party prayed for attorney fees against a non-signatory party. (See *Blickman Turkus*, *LP v*. *MF Downtown Sunnyvale*, *LLC* (2008) 162 Cal.App.4th 858, 897-899; *Leach*, *supra*, 185 Cal.App.3d at pp. 1306-1307.)

The key question, which neither party in this case squarely addresses, is whether the Palmers sued Chandravalli, a nonsignatory defendant, "on a contract as if [she] were a party to it" and they would have been clearly entitled to attorney fees if they had

15

prevailed on the action on the contract.  (*Reynolds*, *supra*, 25 Cal.3d at p. 128.)  We conclude that the Palmers did sue Chandravalli as if she were a party to the purchase agreement or stood in the shoes of her husband, who was a signatory.

The complaint alleges that "the Defendants, and each of them, breached the written Contract . . . ."  It also alleges that the defendants breached the contract's implied duties of good faith and fair dealing and "[d]efendants, and each of them, have committed further callous acts or omissions in breach of the absolute duty of good faith and fair dealing owed to Plaintiffs . . . ."  The rescission cause of action alleges that "[t]he signatures of the parties to the Contract appear at the bottom of Exhibit A[,] Hasmukh Patel signing for Defendants."  All these allegations indicate the Palmers were clearly relying on a theory that defendants were parties to the contract or somehow stood in the shoes of Hasmukh, the party with whom the Palmers expressly contracted.  (Cf., e.g., *Brown Bark III*, *L.P.* *v*. *Haver* (2013) 219 Cal.App.4th 809, 814-817 [successor liability theory]; *Pueblo Radiology Medical Group*, *Inc*. *v*. *Gerlach* (2008) 163 Cal.App.4th 826, 829 [alter ego theory]; *Loduca v*. *Polyzos* (2007) 153 Cal.App.4th 334, 343-345 [intended third party beneficiary]; Code Civ. Proc., § 377.40[7]; see also *Nichols v*. *Arthur Murray*, *Inc*. (1967) 248 Cal.App.2d 610, 612 ["An undisclosed principal is liable for the contractual obligations incurred by his agent in the course of the agency [citations], even

---

[7]      Code of Civil Procedure section 377.40 provides:  "Subject to Part 4 (commencing with Section 9000) of Division 7 of the Probate Code governing creditor claims, a cause of action against a decedent that survives may be asserted against the decedent's personal representative or, to the extent provided by statute, against the decedent's successor in interest."  "In an action or proceeding against a decedent's personal representative or, to the extent provided by statute, against the decedent's successor in interest, on a cause of action against the decedent, all damages are recoverable that might have been recovered against the decedent had the decedent lived except damages recoverable under Section 3294 of the Civil Code or other punitive or exemplary damages."  (*Id*., § 377.42.)  For purposes of the foregoing, " 'decedent's successor in interest' means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action."  (*Id*., § 377.11.)  The term "personal representative" is defined in Probate Code section 58.

16

though the obligee did not know there was a principal at the time the obligations were incurred."].)  Although the Palmers' complaint does not spell out the theory by which Chandravalli (or any other defendant) stood in her deceased husband's shoes, the Palmers cannot escape the mutuality of remedy by artful pleading.

"Civil Code section 1717 covers signatories to a contract containing a fee provision and those who are sued as alleged parties to the contract or otherwise alleged to be bound by its terms."  (*Diamond Heights Village Assn.*, *Inc. v. Financial Freedom Senior Funding Corp.* (2011) 196 Cal.App.4th 290, 307.)  It is enough that the Palmers sued Chandravalli, the surviving spouse of the contracting party, and alleged that she breached the contract and its implied covenant of good faith and fair dealing.  If they had prevailed on the causes of action on the contract against Chandravalli because she stood in her deceased husband's shoes, the Palmers would have been entitled to recover attorney fees from her.  Mutuality of remedy principles are satisfied here.

C.  *The Amount of the Attorney Fees Award*

Chandravalli sought attorney fees in the amount of $355,080 and costs under section 1717, subdivision (a), and Code of Civil Procedure section 1033.5.  Attorney Rinaldo's supporting declaration states with regard to his attached reconstructed billing statement that "[t]ime slips pertaining strictly to other collateral matters such as the foreclosure sale and the sale of the property following foreclosure have been redacted."  The billing statement covers a three-year period from October 29, 2009 through and including October 29, 2012.  It reflects a total of 887.7 hours at $400 per hour, a total of $355,080.

The court deducted 55.8 hours from the attorney fees request and awarded $332,760 in attorney fees, an amount less than requested, plus costs.  On appeal, the Palmers challenge the amount of the attorney fees awarded on a number of grounds.

The Palmers complain that the motion for attorney fees and costs failed to address the applicable legal standard.  The record does not affirmatively demonstrate that the trial

17

court did not follow the applicable law. As a general rule, and in the absence of contrary evidence, courts "presume that the trial court has properly followed established law. (Evid. Code, § 664; *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913 . . . .)" (*People v. Diaz* (1992) 3 Cal.4th 495, 567.) On appeal, error must be affirmatively shown. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Under section 1717, "the trial court has broad authority to determine the amount of a reasonable [attorney] fee. [Citations.]" (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).) " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"[']—meaning that it abused its discretion. [Citations.]" (*Ibid.*)

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. 'California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award.' [Citation.] The reasonable hourly rate is that prevailing in the community for similar work. [Citations.] The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. (*Serrano v. Priest* [(1977)] 20 Cal.3d 25, 49.) Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary. (*Id.* at p. 48, fn. 23.)" (*PLCM Group*, *supra*, 22 Cal.4th at p. 1095.)

" 'It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court. . . . [Citations.] The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial

court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' [Citation.]" (*PLCM Group*, *supra*, 22 Cal.4th at p. 1096.) "The 'necessity for and the nature of the litigation' are also factors to consider. [Citation.] We will reverse a fee award only if there has been a manifest abuse of discretion. (*PLCM* [*Group*], *supra*, at p. 1095.)" (*EnPalm*, *LLC v. Teitler* (2008) 162 Cal.App.4th 770, 774.)

Although the trial court excised almost 56 hours of time from the attorney fees request in calculating the lodestar and it did not use a multiplier to adjust the lodestar either up or down, the Palmers argue that the trial court abused its discretion. The assert that attorney Rinaldo's hourly rate of $400 was excessive in that there was no showing that it was consistent with the "usual and customary rates in Santa Cruz County" and a solo law practice in which the attorney handles his own administrative tasks.

In his supporting declaration, attorney Rinaldo stated that he had been practicing law in California for about 37 years and the primary emphasis of his practice was real estate litigation and complex business litigation. His hourly billing rate was $400 and that had been his rate since approximately 2008. Although the Palmers asserted in their opposition to the attorney fees motion that attorney Rinaldo's hourly rate was excessive, they did not submit any affirmative evidence to that effect.

"The trial court is in the best position to determine the reasonableness of the hourly rate of an attorney appearing before the court and the value of the attorney's professional services. (*Serrano v. Priest* [*supra*,] 20 Cal.3d at p. 49 . . . .)" (*Cordero-Sacks v. Housing Authority of City of Los Angeles* (2011) 200 Cal.App.4th 1267, 1286.) The court presumably has its own expertise with regard to hourly rate "prevailing in the community for similar work. [Citations.]" (*PLCM Group*, *supra*, 22 Cal.4th at p. 1095; *id*. at p. 1096.) The Palmers have not shown that Rinaldo's $400

19

hourly rate was unreasonable or the trial court abused its discretion in accepting that rate. (Cf. *Altavion, Inc. v. Konica Minolta Systems Laboratory Inc*. (2014) 226 Cal.App.4th 26, 71-73; *Davis v. City of San Diego* (2003) 106 Cal.App.4th 893, 902-904.)

The Palmers further assert that block billing is improper and may not serve as a basis for awarding attorney fees. They assert that block billing, i.e., a single time entry for a group of tasks, "obscures the amount of time actually spent on each task" and "opens the door to overstatement of the amount of time the law firm actually spent on specific tasks." They quote this court's statement in *Gorman v. Tassajara Development Corp*. (2009) 178 Cal.App.4th 44: "[T]he burden is on the party seeking attorney fees to prove that the fees it seeks are reasonable. [Citation.]" (*Id*. at p. 98.) We also stated in that case, however, that it is the opposing party's "burden on appeal to prove that the court abused its discretion in awarding fees." (*Ibid*.) There was no issue of block billing in that case.

We recognize that block billing is "particularly problematic in cases where there is a need to separate out work that qualifies for compensation . . . from work that does not. (See *Bell v. Vista Unified School Dist*. (2000) 82 Cal.App.4th 672, 689 [block billing made it 'virtually impossible' to separate out compensable Ralph M. Brown Act (Gov. Code, § 54950 et seq.) violation work from other work].)" (*Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 830.) Block billing is *not*, however, "objectionable 'per se,' though it certainly does increase the risk that the trial court, in a reasonable exercise of its discretion, will discount a fee request. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1325 . . . .)" (*Ibid*.; cf. *Farfaras v. Citizens Bank and Trust* (7th Cir. 2006) 433 F.3d 558, 569 ["Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice"].) The absence of detailed billing records does not necessarily preclude a fee award. (See *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 698-700.) Of course, trial courts "retain discretion to penalize block billing when the practice prevents them from

20

discerning which tasks are compensable and which are not. (*Christian Research Institute v. Alnor*[, *supra*,] 165 Cal.App.4th at pp. 1324-1325 . . . ; *Bell v. Vista Unified School Dist.*, *supra*, 82 Cal.App.4th at p. 689.)" (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1010-1011.)

While the Palmers offer "a handful of examples" of block billing from attorney Rinaldo's billing statement, we observe that some block billing entries list related tasks and not every time entry involves block billing. "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [motion for attorney fees under Code Civ. Proc., § 425.15, subd. (c)].)

We do recognize, however, that, although attorney Rinaldo indicated in his declaration that he excluded attorney time "pertaining strictly" to the foreclosure sale and the sale of the property following foreclosure, there were still some billing entries referring to foreclosure. Perhaps partly for this reason, the superior court did not accept all hours claimed by attorney Rinaldo, impliedly finding that some hours were not reasonably spent on the action on the contract. (Cf. *Serrano v. Unruh* (1982) 32 Cal.3d 621, 639.) As stated, the trial court subtracted almost 56 hours from the total hours claimed. The Palmers have not shown, by specific citation to the appellate record, that the reduced number of hours accepted by the court in calculating the attorney fees award was excessive or unreasonable.

The Palmers maintain that the total amount of attorney fees requested, $355,080, was unconscionable and usurious as a matter of law. They argue that many of the attorney services were irrelevant to the dispute on the contract and attorney Rinaldo "attempted to turn a relatively small case into the 'trial of the century' " and "larded" the

21

time record.  They challenge recovery for any time attorney Rinaldo spent on foreclosure of the property, the motion to transfer venue, opposition to the motion to disqualify him as counsel, opposition to the Palmers' motion for summary judgment, Chandravalli's motion for summary judgment, and discovery.  The Palmers have not shown that the amount of attorney fees actually awarded was unreasonable in this case.

The Palmers have utterly failed to address the general rule that "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Reynolds*, *supra*, 25 Cal.3d at pp. 129-130.)  In addition, "allocation among jointly represented parties 'is not required when the liability of the parties is "so factually interrelated that it would have been impossible to separate the activities . . . into compensable and noncompensable time units  . . . . [Citation.]" '  (*Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1277 . . . ; see *Zintel Holdings*, *LLC v. McLean* (2012) 209 Cal.App.4th 431, 443 . . . .)" (*Brown Bark III*, *L.P. v. Haver*, *supra*, 219 Cal.App.4th at p. 830.)  For example, no apportionment was required where a trial court "could reasonably find that appellants' various claims were ' "inextricably intertwined" ' [citation], making it 'impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units' [citation]." (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111; see *PM Group*, *Inc. v. Stewart* (2007) 154 Cal.App.4th 55, 69 [where plaintiffs' tort theories and a defendant's cross complaint based on an alleged contract were "interrelated and required presentation of virtually identical evidence," the trial court did not abuse its discretion in awarding 90 percent of the fees claimed by plaintiffs who prevailed against defendant's contract claim].)  The Palmers have not shown that the attorney fees award improperly included recovery for services related to only noncontract causes of action, which was not compensable.

22

On the record before us, the amount of the attorney fee award did not constitute a manifest abuse of discretion.  (See *PLCM Group*, *supra*, 22 Cal.4th at p. 1096; *EnPalm*, *supra*, 162 Cal.App.4th at p. 774.)  Therefore, the award must be upheld.

## DISPOSITION

The order awarding attorney fees and costs is affirmed.  Appellants shall bear costs on appeal.

                      _____

                      ELIA, Acting P. J.


WE CONCUR:




_____

BAMATTRE-MANOUKIAN, J.




_____

MIHARA, J.